UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL MCCANN and ERIN MCCANN, o/b/o J.M., a minor, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| YORK SCHOOL DEPARTMENT, | )<br>)<br>) |
| and | )<br>) |
| TIMOTHY and JULIE MCCANN, individually and o/b/o D.M., a minor, | )<br>)<br>) |
| Defendants. | ) |

**COMPLAINT**
**(Jury Trial Demanded)**

Plaintiffs, Michael and Erin McCann, on behalf of their minor son J.M., seek relief under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and the Fourteenth Amendment of the United States Constitution against Defendant York School Department ("YSD"). Plaintiffs also assert common law tort and statutory claims against Defendants Timothy and Julie McCann[1], individually and on behalf of their minor son D.M.

**PARTIES**

1. Plaintiffs Michael McCann and Erin McCann are the parents and legal guardians of J.M., a minor. Plaintiffs all reside in York, Maine.

2. YSD administrative offices are located in the Town of York, Maine.

---

[1] There is no known family relation between the McCann Plaintiffs and the McCann Defendants.

3. YSD is a public entity within the meaning of Title IX and Section 504 as it is a recipient of federal financial funding under applicable programs.

4. Defendants Timothy and Julie McCann are the parents of D.M., a minor, who, upon information and belief, resides with them. They are residents of York, Maine.

## JURISDICTION AND VENUE

5. Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 based on questions of federal and constitutional law.

6. Venue is proper in the District of Maine in that the events and conduct complained of herein all occurred in the District of Maine.

## FACTUAL ALLEGATIONS

7. J.M. has experienced issues with anxiety and attention for many years. In 2013, J.M. was diagnosed with Attention Deficit Hyperactivity Disorder - Inattentive Type and Anxiety ("ADHD"), which qualifies as a "disability" under Section 504.

8. In 2013, YSD determined that J.M. was eligible to receive accommodations under a Section 504 Plan, which, among other provisions, provided J.M. with additional time for certain tasks and permission to take breaks if he was feeling anxious.

9. Between 2013-2016, J.M. attended York Middle School. J.M. was subjected to repeated incidents of bullying and harassment from fellow based on perceived nonconformance with conventional gender norms and stereotypes.

10. One such incident occurred in September 2015 during a school-sponsored "team building" overnight trip with J.M.'s 7th grade class. YSD placed J.M. in a bunk room with boys who harassed and bullied J.M. for 2 consecutive nights and days, including but not limited to defiling J.M.'s pillow with their genitalia and throwing

water on him while claiming he had urinated himself. The boys threatened to physically beat J.M. if he informed the school or his parents.

11.  J.M. told a chaperone, and the chaperone informed YSD officials.

12.  Later in the 2015-2016 school year, J.M. and his parents complained to YSD numerous times about other incidents of bullying, including but not limited to an incident in which J.M. was physically assaulted while it was videotaped by one of the boys' friends, and another incident that involved the destruction of J.M's iPad.

13.  J.M.'s parents withdrew him from York Middle School at the end of the 2015-16 year because of YSD's failure to properly investigate or address bullying.

14.  J.M. began seeing a mental health counselor in the summer of 2016.

15.  J.M. enrolled at Maine Connections Academy for his 8th grade year (2016-17).

16.  In August 2017, J.M. enrolled in grade 9 at York High School ("YHS"). Plaintiffs contacted YSD officials before the school year began to schedule a "Section 504 meeting" to discuss changes to J.M.'s Section 504 Plan, including the need to address J.M.'s growing anxiety and concerns for his physical safety at school.  After no response from YSD, Plaintiffs continued to request a Section 504 meeting after the school year began.

17.  In August 2017, J.M. was bullied and harassed by fellow students.  The bullying and harassment was led by a group of 9th grade girls and a 9th grade boy, "G.M.", who, upon information and belief, identifies himself as a gay man.

18.  Also in August 2017, the group of 9th grade girls exchanged social media messages with J.M. and some of his friends.  The comments escalated from mutual teasing to offensive banter.  One of the messages referred to G.M. as a "fag".  The girls

forwarded the message to G.M., who shared it with his mother, Defendant Julie McCann. Ms. McCann told school officials that J.M. was bullying G.M.

19. Son after this, G.M. told J.M. he would have his older brother, D.M., a junior hockey player, beat up J.M.

20. The bullying and harassment intensified in September 2017. G.M. and his friends called J.M. offensive names ("bitch" or "cunt") and taunted him.

21. Following one particular incident in late September, J.M. became so distraught that he left school and walked home. Plaintiffs contacted YSD's designated "Section 504 coordinator" (an assistant principal at YHS) and the YHS school resource officer to report the bullying incidents and to discuss J.M.'s growing fear and anxiety.

22. On October 3, 2017, YSD convened an emergency Section 504 meeting at Plaintiffs' request to discuss potential changes to the Section 504 Plan. Among several other attendees, those present included Plaintiffs, the designated Section 504 coordinator, the school counselor, and several teachers.

23. YSD drafted modifications to J.M.'s existing Section 504 Plan. Among other provisions, the October 3, 2017 Section 504 Plan allocated responsibility to YSD for "work[ing] with J.M. to identify (a) a safe place to go when he feels anxiety, and (b) a trusted adult to seek out when necessary. J.M. can access the school social worker and/or his school counselor as necessary."

24. In the subsequent days following the October 3, 2017 Section 504 meeting, the group of 9th grade girls and G.M. continued to bully, harass, and threaten J.M.

25. G.M. and/or his friends continued to call J.M. a "cunt" and "bitch".

26. J.M. responded to G.M. by "flipping" his middle finger at the girls and G.M.

27. G.M. again threatened J.M. that his brother "D.M." would beat up J.M.

28. Plaintiffs informed YSD and the school resource officer of the incidents of bullying and harassment following the October 3, 2017 meeting, identified G.M. and the 9th grade girls as the main protagonists, and about the threats of assault by D.M.

29. On October 19, 2017, J.M. told the Section 504 coordinator about the threats from G.M. and D.M. She told J.M. that she would "take care of it".

30. On October 19, 2017, J.M. told the school resource officer about the ongoing incidents of bullying and harassment and the threats from G.M. and D.M.

31. On October 19, 2017, Plaintiff Erin McCann sent an email to the Section 504 coordinator summarizing J.M.'s meeting with her that day and to request her help in preventing further escalation of the situation, including contacting G.M.'s parents.

32. At the beginning of the school day on October 20, 2017, several students warned J.M. that they had heard that D.M. planned to attack J.M. later that day.

33. After the warnings from his friends, J.M. went to the school counselor to tell her about the the impending attack. The counselor did not forward J.M.'s report, and, upon information and belief, took no action to intervene or prevent the attack.

34. J.M. then went to his second period math class.

35. D.M., who was not in J.M.'s math class, entered J.M.'s classroom, pointed at J.M., and said "let's take a walk". J.M. was terrified.

36. Several other students followed J.M. and D.M. into the hallway. They began yelling things at J.M. such as "you shouldn't have messed with G.M.".

37. D.M. then savagely attacked and physically beat J.M. in the hallway. D.M. pushed J.M. into a glass door, threw him against a locker, pounded his head against the locker numerous times, and punched him repeatedly. The assault was caught on tape.

38. J.M. lost consciousness during the assault.

39. J.M. was taken by ambulance to the York Hospital Emergency Room, where he was diagnosed with a head injury (later determined to be a major concussion), several contusions, and a dislocated jaw. He missed over 3 months of school.

40. J.M. has sought mental health counseling. He suffered severe emotional distress and was diagnosed with Post Traumatic Stress Disorder (PTSD).

41. After the assault on October 20, 2017, the Section 504 coordinator responded by email to Erin McCann to acknowledge J.M. asked for her help.

42. Prior to and after the assault on October 20, 2017, G.M. told other students of his plan to have his brother D.M. assault J.M.

43. Prior to October 20, 2017, Defendants Timothy and Julie McCann knew or should have known that their son D.M. intended to assault J.M. but failed to take any action to prevent it or properly supervise D.M.

44. After the assault on October 20, 2017, York High School principal Karl Francis sent an email to members of the York High School community about the assault. He stated that the assault was the result of "unresolved conflict between two students about excessive taunting". Mr. Francis acknowledged in his email that YSD had prior knowledge about the "ongoing conflict". Mr. Francis incorrectly stated that YSD addressed the issue by "meeting with the parties". Mr. Francis then incorrectly stated YSD had "no information about an imminent physical assault".

45. Plaintiffs immediately responded to Mr. Francis by email to provide additional information and to correct some of the incorrect statements made by Mr. Francis in his email about the assault. For example, Plaintiffs informed Mr. Francis that J.M. was not involved in "excessive taunting". They also provided details about the several instances in which they and their son had reported incidents of bullying and harassment to YSD, including the reports to YSD officials about the threats from D.M.

46. On and after October 20, 2017, Defendant Julie McCann engaged in social media exchanges and made public statements expressing support for both of her sons.

47. At a home football game on the night of October 20, 2017, dozens of students staged a rally in support of G.M. and D.M. Students wore t-shirts with "Free [D.M.]" on the front. Other students set up a hashtag "#[D.M.]isasickbrother".

48. On October 23, 2017, dozens of YHS students walked out of school to launch a protest about bullying and harassment against the LGBQT community and to support D.M., who had been suspended from school and later subjected to criminal charges. Students identified J.M. by his name on television and on social media as the wrongdoer.

49. Due to his concussion, J.M. was unable to attend school until February 2018. J.M. remains deeply traumatized by the assault and bullying and harassment.

### COUNT I: Violation of Title IX
### (vs. York School Department)

50. Plaintiffs repeat the allegations contained in Paragraphs 1 through 49.

51. Title IX provides that "[n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program receiving Federal financial assistance." 20 U. S. C. § 1681(a).

7

52. J.M. was the victim of numerous acts of harassment by male and female peers within the control of YSD. The harassment was severe, pervasive, and objectively offensive such that it denied J.M. equal access to education and services. The harassment was based on and motivated by J.M.'s perceived nonconformance with conventional gender norms and stereotypes.

53. On October 20, 2017, J.M. was assaulted at YHS by a student within the control of YSD. The assault was severe, pervasive, and objectively offensive such that it denied J.M. equal access to education and services. The assault was based on and motivated by J.M.'s perceived nonconformance with conventional gender norms and stereotypes.

54. YSD was deliberately indifferent to the rights of J.M.

55. As a direct and proximate result of YSD's deliberate indifference to the harassment and assault, J.M. has suffered damages in an amount to be determined at trial, plus costs of suit and attorney's fees.

## COUNT II: Violation of Section 504
### (vs. York School Department)

56. Plaintiffs repeat the allegations contained in Paragraphs 1 through 55.

57. Section 504 of the Rehabilitation Act of 1973 provides, in pertinent part: "[n]o otherwise qualified individual with a disability…shall, solely by reason of his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

58. J.R. received disability-based accommodations from YSD since 2013.

59. In response to J.M.'s complaints of bullying and harassment and reports of increased and worsening anxiety, YSD modified J.M.'s Section 504 Plan on October 3,

2017 such that YSD agreed to work with J.M. to feel safe when J.M. became anxious about bullying, harassment, or threats of violence.

60. Before and after October 3, 2017, J.M. and his family informed YSD on several occasions that J.M. felt anxious and threatened due to ongoing peer-to-peer harassment and threats of an imminent physical attack from D.M. YSD knew that J.M.'s disability manifested in heightened fear and anxiety stemming from repeated acts of bullying and harassment. YSD's failure to implement or enforce anti-bullying and harassment laws, policies, procedures, customs, or practices and its failure to abide by the October 3, 2017 Section 504 Plan amount to acts of bad faith or gross misjudgment.

61. Through its acts and omissions above, YSD denied J.M. an equal opportunity to participate in programs and services free from harassment or assault, unlawfully discriminated against J.M. on the basis of his disability, subjected J.M. to a hostile educational environment, and failed to accommodate J.M.'s unique special needs.

62. As a direct and proximate result of YSD's acts and omissions, J.M. has suffered damages in an amount to be determined at trial, plus costs and attorney's fees.

63. Plaintiffs do <u>not</u> allege that J.M. has been deprived of a "free appropriate public education" under Section 504, and therefore they are not required to exhaust administrative remedies prior to filing a civil action for money damages.

### COUNT III: Violation of Fourteenth Amendment
### (vs. York School Department)

64. Plaintiffs repeat the allegations contained in Paragraphs 1 through 63.

65. Section 1983 of Title 42 prohibits a person acting under color of state law from depriving any other person of any rights, privileges or immunities secured by the

9

United States Constitution. The Fourteenth Amendment of the United States Constitution provides, in pertinent part, that a state actor may not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws".

66. The York School Department deprived J.M. of his Constitutional rights to substantive due process and equal protection of the laws by, among other acts and omissions, its (i) failure to follow, apply, comply with, or enforce anti-bullying and harassment laws, policies, procedures, customs, or practices, and (ii) failure to adequately train or supervise employees or agents about their obligation to properly investigate and address incidents bullying, harassment, or assault in public schools.

67. YSD's failure to follow, apply, or enforce laws, policies, procedures, customs, or practices and its failure to adequately train or supervise its employees amounts to deliberate indifference to the rights of J.M. and to foreseeable harms caused therefrom.

68. As a direct and proximate result of YSD's acts and omissions, J.M. has suffered damages in an amount to be determined at trial, plus costs and attorney's fees.

### COUNT IV: Assault
**(vs. Timothy and Julie McCann o/b/o D.M.)**

69. Plaintiffs repeat the allegations contained in Paragraphs 1 through 68.

70. D.M. acted in such a way to intentionally cause harmful or offensive contact with and/or cause J.M. to experience imminent apprehension of such contact, and D.M.'s actions in fact caused J.M. imminent apprehension of such contact.

71. As a direct and proximate result of D.M.'s intentional acts, J.M. suffered damages, including emotional distress damages, in an amount to be proven at trial.

### COUNT V: Battery
### (vs. Timothy and Julie McCann o/b/o D.M.)

72. Plaintiffs repeat the allegations contained in Paragraphs 1 through 71.

73. On October 20, 2017 at York High School in York, Maine, D.M. intended to cause, and in fact caused, harmful or offensive physical contact with J.M.

74. As a direct and proximate result of D.M.'s intentional and harmful offensive contact, J.M. suffered personal injuries and sustained damages, including severe emotional distress, in an amount to be proven at trial.

### COUNT VI: Intentional Infliction of Emotional Distress
### (vs. Timothy and Julie McCann o/b/o D.M.)

75. Plaintiffs repeat the allegations contained in Paragraphs 1 through 74.

76. D.M.'s physical attack of J.M. was extreme and outrageous conduct.

77. D.M.'s acts on October 20, 2017 intentionally or recklessly caused J.M. to experience severe emotional distress.

78. As a direct and proximate result of D.M.'s extreme and outrageous conduct, J.M. suffered damages in an amount to be proven at trial.

### COUNT VII: Negligence
### (vs. Timothy and Julie McCann)

79. Plaintiffs repeat the allegations contained in Paragraphs 1 through 78.

80. Maine law provides that a parent is under a duty to exercise reasonable care to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm, if the parent (a) knows knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control.

*Restatement (2nd) Torts* § 316; *Merchant v. Mansir*, 572 A.2d 493, 494 (Me. 1990).

81. Defendants Timothy and Julie McCann knew or had reason to know that they had the ability to control their minor child D.M.

82. Defendants Timothy and Julie McCann knew or had reason to know of the necessity and opportunity for exercising such control of D.M.

83. Defendants Timothy and Julie McCann knew or should have known their son D.M. created an unreasonable risk of harm to J.M.

84. Defendants Timothy and Julie McCann owed J.M. a reasonable duty of care to exercise control over D.M. and prevent him from conducting himself in a way so as to create an unreasonable risk of harm to J.M.

85. Defendants Timothy and Julie McCann breached their duty to J.M. by failing to exercise control over D.M., failing to properly supervise D.M., and failing to intervene to prevent D.M. from creating an unreasonable risk of harm to J.M.

86. Defendants Timothy and Julie McCann knew or should have known their son D.M. intended to cause offensive physical harm J.M.

87. Defendants Timothy and Julie McCann owed J.M. a reasonable duty of care to exercise control over D.M. and prevent him from intentionally harming J.M.

88. Defendants Timothy and Julie McCann breached their duty to J.M. by failing to exercise control over D.M., failing to properly supervise D.M., and failing to intervene to prevent D.M. from harming J.M.

89. As a direct and proximate result of Timothy and Julie McCann's breach of their duty of care to J.M., J.M. suffered damages, including severe emotional distress damages, in an amount to be proven at trial.

### COUNT VIII: Liability of Parents for Damage by Children
### (vs. Timothy and Julie McCann)

90. Plaintiffs repeat the allegations contained in Paragraphs 1 through 89.

91. Maine law provides that if a minor between the ages of 7 and 17 years of age willfully or maliciously causes damage to property or injury to a person and the minor would have been liable for the damage or injury if the minor were an adult and the minor lives with his parents, the parents are jointly and severally liable with their minor child for the damage or injury in an amount not to exceed $800. 14 M.R.S. § 304.

92. On October 20, 2017, while D.M. was 17 years of age or less and residing with his parents, Defendants Timothy and Julie McCann, D.M. willfully or maliciously caused J.M. to suffer serious personal injury and emotional distress damages.

93. As a direct and proximate result of D.M.'s willful or malicious acts of physical assault and battery on J.M., Defendants Timothy and Julie McCann are jointly and severally liable with D.M. for J.M.'s injuries and damages up to $800.

**PURSUANT TO RED. R. CIV. P. 38(b), PLAINTIFFS REQUEST TRIAL BY JURY OF ALL CLAIMS SO TRIABLE BY RIGHT.**

<u>**Dated**</u>: August 24, 2018                    Respectfully Submitted,

*/s/ James A. Clifford*
James A. Clifford
james@cliffordclifford.com
*/s/ Andrew P. Cotter*
Andrew P. Cotter
andrew@cliffordclifford.com
CLIFFORD & CLIFFORD, LLC
62 Portland Rd., Suite 37
Kennebunk, ME 04043
(207) 985-3200

Attorneys for Plaintiffs
